United States Court of Appeals
Fifth Circuit

**F I L E D**

June 22, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 05-70032

_____

RYAN HEATH DICKSON,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas

_____

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Petitioner Ryan Heath Dickson was convicted of capital murder in Texas state court and sentenced to death. The district court denied his petition for a writ of habeas corpus and refused to issue a certificate of appealability ("COA"). Petitioner now requests a COA from this court to address one issue: whether failure to disclose the pre-trial statements of two prosecution witnesses violated his right to due process.

I

On November 27, 1994, police in Amarillo, Texas, were called to a small grocery store run by Carmelo Surace and his wife, Marie. When they arrived, the officers found Marie dead and Carmelo critically injured. The police learned that four young males—petitioner, his younger brother Dane Dickson, Freddie Medina, and Jeremy Brown—had attempted to steal beer from the store. After first gathering outside the store, the two brothers entered while Medina and Brown waited outside. Inside, petitioner began arguing with Carmelo Surace, and the two began to struggle. Sometime thereafter, petitioner shot and injured Carmelo with a sawed-off rifle he had carried into the store. Before fleeing with his brother, petitioner allegedly shot and killed Marie. Carmelo later died from his injuries.

The state charged petitioner with the murder of Carmelo Surace and sought the death penalty.[1] The jury found him guilty and answered the Texas special issues in a manner that supported application of the death penalty. The Texas Court of Criminal Appeals affirmed the conviction and death sentence on direct appeal.

After conviction, state prosecutors revealed that they had not given the defense access to audiotapes of their pretrial interviews with two trial witnesses, Jeremy Brown and Dane Dickson. During these interviews, prosecutors questioned the two about the day's events and used written statements the young men had given to police to both confirm and refresh their recollection prior to trial. Transcripts of these sessions indicate that Brown and Dane Dickson questioned the accuracy of their prior written statements and expressed doubt regarding certain factual assertions that were

---

[1] The state brought a separate proceeding for the murder of Marie Surace.

relevant to the state's burden of proof at trial.

Brown asserted in his written statement that petitioner verbalized an intent to shoot Carmelo and Marie Surace prior to entering the store. During the pretrial interview, however, Brown equivocated and seemed unsure that petitioner had done so. Over the course of the interview and after persistent questioning by prosecutors, Brown became more certain that petitioner had, in fact, expressed an intent to kill the people in the store. At the end of the interview, prosecutors assured Brown that, because this version of events was corroborated by other evidence and did not implicate him, he did not need to worry about being prosecuted for murder. Dane Dickson also retreated from certain factual assertions in his written statement. In that statement, he claimed to have been in the store when his brother shot Marie Surace. During his pretrial interview, however, Dane Dickson stated that he did not actually witness the shooting but, rather, mistakenly "incorporated" what his brother told him about the shooting into his written statement to the police.

After prosecutors disclosed the existence of the audiotapes, petitioner filed an application for writ of habeas corpus in state court based, in part, on his claim under *Brady v. Maryland,* 373 U.S. 83 (1963), that the state improperly withheld material that could have been used to show bias and to impeach both witnesses. After receiving evidence and argument, the state trial court found that: (1) the tapes contained impeachment material; (2) harm from "such impeachment material may be presumed from the result obtained in this case;" (3) although the trial testimony by Dane Dickson was essentially the same as the tape recorded statement, there were still "some" differences; (4) "[e]specially regarding Jeremy Brown's tape recorded interview, [the] Defense might have been able to impeach Mr. Brown's trial testimony by showing that for the first 40 to 50 pages of said interview he wasn't sure about Mr. Dickson's intent;" (5) the "Defense might also have shown that in Mr.

-3-

Brown's tape recorded interview, it is only after he is informed that he is not likely to be prosecuted for his involvement in this crime that he reveals Mr. Dickson's statement concerning his intent to kill;" and (6) "the jury might have reached a different conclusion" if Brown had been effectively impeached.

Although it was "not sure that the disclosure of the recorded interviews and their use by Defense counsel at trial would have caused the jury to reach a different verdict," the state trial court recommended that the Texas Court of Criminal Appeals grant petitioner a new trial. The Court of Criminal Appeals disagreed and denied the habeas petition.

After exhausting his state remedies, petitioner filed a federal petition for writ of habeas corpus and renewed his *Brady* claim. Applying the deferential habeas standard in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the district court concluded that the petition for writ of habeas corpus should be denied.[2] First, despite acknowledging that Brown's pretrial interview could have been used to impeach, the district court found that disclosure of his earlier statements would not have undermined confidence in the verdict because other evidence of petitioner's intent to kill, including Medina's trial testimony that petitioner said he was "going to shoot the two old people in the store" before entering, corroborated his testimony. Second, the district court found that Brown's pretrial interview would not support a showing of bias. According to the federal habeas court, there was no "implied deal" because the state attorney's assurance that he would not be prosecuted took place only after Brown affirmed that petitioner had expressed an intent to kill. Finally, the district

---

[2] Under AEDPA, a federal court cannot grant habeas corpus relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim [either] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

court found that Dane Dickson's pretrial interview could not be used to impeach because his testimony at trial was "favorable" to the defense and consistent with his position in the pretrial interview that he had not watched his brother shoot Marie Surace.

II

Petitioner seeks a COA to appeal the district court's denial of his *Brady* claim.[3]  It is now axiomatic that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Brady*, 373 U.S. at 87).  The prosecution has a duty to disclose such evidence even absent a specific request by the accused.  *Strickler v. Greene*, 527 U.S. 263, 280 (1999); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  To prevail on a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281-82.  Evidence is material under *Brady* where there exists a "reasonable probability" that had the evidence been disclosed the result at trial would have been different.  *Banks*, 540 U.S. at 698-99.  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Under AEDPA, a petitioner is entitled to a COA if he makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (no jurisdiction to rule on the merits of habeas petition until COA issues).  "A petitioner

---

[3] The district court also denied petitioner's ineffective assistance of counsel claim.  He does not seek a COA to review the denial of this claim.

satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) ("In determining whether a COA should be granted, we remain cognizant of the standard of review imposed upon the district court by [AEDPA].").  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.  "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id*. at 338.

Under the preceding legal framework, our sole task is to decide whether the district court's assessment of petitioner's *Brady* claim is either "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In other words, we determine whether petitioner has established that reasonable jurists could disagree that the state court was unreasonable in determining that the failure to make these pretrial statements available violated his right to due process.[4]

The district court acknowledged that Brown's pretrial statement could have been used to impeach because he "vacillated" regarding his belief that petitioner had expressed an intent to kill the Suraces before entering the store.  Nonetheless, it concluded that his trial testimony was corroborated

---

[4] Petitioner's principal argument supporting his COA request is that reasonable jurists not only could, but did, disagree on whether he had established a claim under *Brady*.  Although the Texas Court of Criminal Appeals rejected its suggestion, the state trial court recommended that petitioner be given a new trial based upon its finding that potentially material impeachment evidence had not been disclosed.  Respondent disagrees.  All but ignoring the state trial court's contrary conclusion, respondent argues that the Texas Court of Criminal Appeals made an "implicit finding that the identified evidence was not material within the meaning of *Brady*" and contends that the existence of corroborative evidence removes any hint of prejudice from the failure to produce the pretrial statements.

-6-

by other evidence of intent and that this lessened the materiality of the pretrial statement. *See Kopycinski v. Scott*, 64 F.3d 223, 226 (5th Cir. 1995) (examining corroborating evidence and stating that the materiality inquiry assesses whether disclosure "would have placed the case in a different light so as to undermine confidence in the jury verdict").[5] To prove intent, the prosecution relied upon evidence that petitioner carried a sawed-off rifle into the store, shot Marie Surace shortly after shooting her husband, bragged about the shooting afterwards, admitted to the police that he shot Mr. Surace after he grabbed for the gun, and later represented to his girlfriend that he had become a senior gang member because of the killings. The prosecution's key evidence of intent, however, was the testimony of Brown (and Medina) that, prior to entering the store, petitioner stated that he was going to shoot the people inside. This testimony was contrary to the defense's apparent theory at trial that Carmelo Surace was inadvertently killed during a struggle.[6] Brown's trial testimony was an important part of the state's evidence of intent by a witness who could have been impeached. Whether corroborative evidence rendered the withheld statement immaterial is debatable among jurists of reason and is an issue that requires fuller consideration on appeal.

The district court concluded that petitioner could not show bias through evidence of an "implied deal" with Brown. Although the prosecutor's assurance that Brown would not be

---

[5] Although Dane Dickson testified to seeing the struggle, he did not testify to hearing his brother say that he would shoot the people in the store. Accordingly, defense counsel argued that the principal evidence of intent was the testimony of Brown and Medina and, furthermore, that their testimony was not credible.

[6] The state trial court's recommendation of a new trial suggests that reasonable jurists could debate whether the pretrial statement contained material impeachment evidence. *See Beem v. McKune*, 317 F.3d 1175, 1179 (10th Cir. 2003) (stating that because a divided panel had previously granted habeas relief and because it had granted *en banc* review, the court was "satisf[ied] . . . that reasonable jurists would find the district court's assessment of the petitions' constitutional claims 'debatable' ").

prosecuted for murder was given only after Brown affirmed that petitioner had stated an intent to kill, we disagree with respondent that this fact renders a claim of bias "pathetic." Reasonable jurists could debate whether withholding this information was prejudicial and whether this assurance could be used to demonstrate, among other things, the motivation for Brown's less equivocal trial testimony.

Like the district court, we find that Dane Dickson's pretrial statement was largely consistent with his testimony at trial.[7] We disagree, however, with the district court's characterization of his testimony as "favorable." Dane Dickson's trial testimony implicated petitioner as the Suraces' killer. Even if consistent with the overall defense theory at trial, such testimony is not necessarily "favorable." Furthermore, the existence of a prior consistent statement, in certain contexts, can be useful to an accused. *See, e.g., United States v. Wilson*, 355 F.3d 358, 361 (5th Cir. 2003) (noting that under Rule 801 of the Federal Rules of Evidence, a prior consistent statement may be used to rebut an allegation of fabrication). Because reasonable jurists could debate whether effective disclosure of this evidence would have changed the disposition of this case, we find that the issue deserves fuller consideration on appeal. *See Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000) (in death penalty cases, court resolves doubts in petitioner's favor).

III

For the reasons stated, petitioner's request for a COA as to his *Brady* claim is GRANTED.

EDITH BROWN CLEMENT, Circuit Judge, dissenting:

The decision to grant COA must be based on the merits of the petitioner's habeas claim under

---

[7] Respondent attempts to limit the scope of petitioner's request for a COA, asserting that petitioner has abandoned the claim that Dane Dickson's pretrial interview contained *Brady* evidence. Although petitioner presents limited argument regarding its materiality, we are unwilling to find, for purposes of this COA, that petitioner has conceded this issue.

the Antiterrorism and Effective Death Penalty Act ("AEDPA"); this is true even in a capital case. While I do not disagree with the standard for granting COA that the majority identifies, I cannot see how that admittedly low threshold has been met. In granting COA, the majority ignores the lack of merit of Dickson's claims and the obvious support in the record for the Director's position. Because the majority fails to adhere to the strictures of AEDPA, I respectfully dissent.

My disagreement with the majority opinion is two-fold. First, the majority disregards the wealth of corroborating evidence that renders the undisclosed statements immaterial for the purposes of *Brady v. Maryland*, 373 U.S. 83 (1963). This is improper under this circuit's *Brady* jurisprudence. *See East v. Johnson*, 123 F.3d 235, 239 (5th Cir. 1997) (stating "when the testimony of a witness who might have been impeached by undisclosed evidence is strongly corroborated by additional evidence, the undisclosed evidence generally is not found to be material"). *See also Summers v. Dretke*, 431 F.3d 861, 874 (5th Cir. 2005) (denying COA on a *Brady* claim). I would not dissent on this point alone, however, because the majority's error may be addressed at the merits phase.

Second, and most troubling, the majority grants COA based on the debatability of the *Brady* claim, not the debatability of the district court's resolution of the habeas petition under AEDPA. Even if there were room for debate on whether the undisclosed statements are material under *Brady*, that is not the question before this court. Rather, the relevant question is whether the district court's resolution under AEDPA is debatable. As such, we must ask whether jurists of reason can debate that the state court's rejection of Dickson's claims was contrary to or an unreasonable application of clearly established Supreme Court precedent. But the majority grants COA without even considering this question. While I disagree with the majority's assessment that the undisclosed statements are even potentially material under *Brady*, I dissent because of the majority's failure to incorporate

-9-

AEDPA's deferential standard into its analysis.