# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 29, 2008

Charles R. Fulbruge III
Clerk

No. 06-10448

CLINTON SHELTON,

Petitioner-Appellant,

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:05-cv-763

Before PRADO, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Petitioner Clinton Shelton appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. We affirm.

## I. BACKGROUND

Petitioner Clinton Shelton ("Shelton"), his wife Catherine Shelton, Marissa Hierro and her husband Michael Hierro were at some point involved in a business enterprise together. The Sheltons and the Hierros eventually had a falling out over business matters. On December 20, 1999, the Hierros were ambushed outside their home in Rowlett, Texas; Michael Hierro was killed and Marissa was shot and seriously injured. Lying on the sidewalk bleeding,

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Rule 47.5.4.

Marissa Hierro, playing dead, heard two individuals arguing over whether to shoot her again to ensure her death. Hierro identified the male voice—the voice expressing a reluctance to fire again—as that of Clinton Shelton, and the other voice as that of his wife, Catherine. Marissa Hierro also described for authorities, and for the jury at Shelton's trial, a mask and a pair of gloves the shooter allegedly donned.

Located near the Hierros' home at the time of the shooting was a portable toilet ("the toilet") used by a construction company performing work nearby and serviced by Browning Ferris, Inc. (BFI). Upon arriving at the scene to investigate the shooting, a Rowlett police officer discovered in that toilet a pair of rubber gloves and a mask fashioned from pantyhose. Shelton's DNA was found on the mask, a fact he has never disputed.

Shelton was prosecuted in the 195th Judicial District Court in Dallas County, Texas for murder and aggravated assault. Unsurprisingly, one of the most incriminating pieces of evidence against Shelton was the mask containing his DNA. Rather than denying that the mask and gloves were his, Shelton claimed that he deposited the items in the toilet the day before the shooting, December 19th, for reasons unrelated to the shooting. Specifically, Shelton claimed that in December 1999 he was contemplating divorce; he therefore anticipated the need to subpoena Marissa Hierro to testify in his favor at divorce proceedings. Thus, according to Shelton, he drove to the Hierro residence on December 19th to confirm Marissa's address in the event a subpoena became necessary. Shelton claims he wore the mask simply so that he could monitor the Hierro property incognito.

Thus, critical to Shelton's defense was the date on which he placed the gloves and mask in the toilet. If the State could prove that he did so on the day of the murder, rather than on the previous day, it would deflate Shelton's defense. To that end, the State presented the testimony of BFI employee Charles Lakes ("Lakes"), who swore that he had cleaned the toilet on the

morning of the 20th, the implication being that any items discovered therein later that day must have been deposited that day. Thus ensued a controversy at trial over whether Lakes did indeed clean the toilet on the 20th as he claimed. In attempting to prove that he did not, Shelton's counsel sought the toilet's service records, most of which he was unable to obtain. A jury found Shelton guilty of murder and aggravated assault on November 16, 2000. The trial court sentenced Shelton to life in prison. Shelton appealed, and his sentence and conviction were affirmed.

Catherine Shelton was never prosecuted for her alleged participation in the shooting. However, after Shelton's conviction, Marissa Hierro filed in the 192nd Judicial District Court in Dallas County, Texas a wrongful death lawsuit against Catherine Shelton. Catherine countersued, asserting a claim of libel against Hierro based on Hierro's public allegation that Catherine Shelton participated in the shooting. During discovery, additional evidence related to the shooting surfaced, but the lawsuit never made it to trial. Hierro eventually abandoned the suit, and Catherine Shelton was awarded a judgment on her counterclaim for libel.

After judgment was entered in the civil suit, Catherine Shelton's attorney, James Murphy, sent a letter to Shelton dated December 19, 2003. In that letter, Murphy explained his belief that some of the evidence that surfaced in the civil suit supported the defense theory Shelton presented at his criminal trial; Murphy also explained his belief that the prosecution wrongfully withheld some of that evidence. On February 4, 2004, over six weeks after receiving Murphy's letter, Shelton applied for a writ of habeas corpus in state court. On May 24, 2004, over six weeks after the state district court entered its findings of fact and conclusions of law recommending that the Texas Court of Criminal Appeals deny his petition on the merits, Shelton filed a motion with the Texas Court of Criminal Appeals in which he suggested the existence of newly discovered

3

evidence and its potentially exculpatory nature. On January 19, 2005, the Texas Court of Criminal Appeals denied Shelton's petition.

On March 17, 2005, Shelton filed his § 2254 habeas corpus petition in federal district court in which he asserted numerous claims, including ineffective assistance of counsel and prosecutorial misconduct. Shelton also filed in the district court a motion to expand the record, arguing that further discovery would reveal evidence demonstrating that the government at trial knowingly offered perjured testimony, that it wrongfully withheld exculpatory evidence and that he received ineffective assistance of counsel. Shelton also argued that the state court unfairly refused to expand the record and to permit further discovery. On February 9, 2006, the magistrate judge to whom the district court referred the case recommended that the district court deny Shelton's procedural motions as well as his petition on the merits. The district court adopted the magistrate judge's conclusions and recommendations and entered a final judgment against Shelton on March 7, 2006.

Although the district court refused to do so, this court, on August 8, 2007, granted a limited certificate of appealability (COA) on three issues: (1) whether the district court wrongfully denied Shelton's requests for further discovery, for an evidentiary hearing, and to expand the record; (2) whether his trial counsel, John Young, provided ineffective assistance of counsel; and (3) whether the government committed prosecutorial misconduct by either inducing its witnesses to commit perjury at trial or by wrongfully concealing exculpatory evidence from the defense.

## II. DISCUSSION

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), we defer to state court merits determinations unless those determinations: (1) are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." With regard to a district court's application of this standard, "we review the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standards to the state court's decision as did the district court." Horn v. Quarterman, 508 F.3d 306, 311 (5th Cir. 2007) (quoting Busby v. Dretke, 359 F.3d 708, 713 (5th Cir. 2004)).

## A. Procedural Motions

Shelton argues that by the time he filed his state habeas petition, evidence had surfaced evincing the prosecution's knowing provision of perjured testimony and its wrongful retention of exculpatory evidence. In the state district court, Shelton sought discovery and expansion of the record based on this evidence, but only after that court issued its findings of fact and conclusions of law; for some reason, Shelton failed to specifically invoke the new evidence in his state habeas petition. In federal district court, Shelton argued that he was not allowed to develop his claims fully in state court, and therefore the district court should have, pursuant to rules 6, 7 and 8 of the Rules Governing Section 2254 Cases, held an evidentiary hearing and allowed Shelton to discover, and expand the record with, the allegedly exculpatory evidence.

The district court referred Shelton's case to the magistrate judge, who recommended denying these motions based on case law purportedly dictating that federal courts, in reviewing a state court's merits determinations, may consider only the evidence presented to the state court. We review the district court's order with respect to each of Shelton's procedural motions.

### 1. Motion for Leave to Conduct Discovery

In his Motion for Leave—and, read broadly, his primary habeas brief—Shelton sought discovery of evidence relating to his claims that: (1) the government induced Marissa Hierro to lie on the stand concerning her business dealings with the Sheltons prior to the shooting, a lie which allegedly served to reinforce the government's characterization of Shelton's motive; (2) the

prosecution failed to disclose to the defense exculpatory BFI toilet records, which allegedly show that, contrary to the testimony of BFI employee Lakes, the toilet was not cleaned on the morning of December 20, 1999; (3) the prosecution was in possession of, and failed to disclose to the defense, "highly exculpatory . . . telephone records which unequivocally show that Catherine Shelton was nowhere near the Hierro residence when Michael Hierro was shot"; (4) the government failed to disclose Marissa Hierro's drawing of the perpetrator's mask purportedly provided to police shortly after the shooting, a drawing that allegedly depicted a mask appreciably different than the one found by police in the toilet; and (5) Marissa Hierro committed perjury when she placed Catherine Shelton at the scene of the shooting.

Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  In Bracy v. Gramley, 520 U.S. 899 (1997), the Supreme Court expounded the "just cause" clause of Rule 6(a):

> [W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry.

Id. at 908-09 (citation and internal quotation marks omitted).  In the wake of Bracy, this court has stated that "[g]ood cause may be found when a petition for habeas corpus establishes a prima facie claim for relief."  Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000) (citations and internal quotation marks omitted).  However, "a petitioner's factual allegations must be specific, as opposed to merely speculative or conclusory, to justify discovery under Rule 6."  Id.  Accordingly, in order to reverse the district court's ruling on Shelton's motion for leave to conduct discovery, we must at least conclude that (1) Shelton stated a prima facie case for relief based on the evidence sought to be discovered

and (2) that his prima facie case was premised on specific allegations rather than speculative and bald accusations. The court must then find that the district court abused its discretion in denying Shelton further discovery. See Clark v. Johnson, 202 F.3d 760, 765-66 (5th Cir. 2000) ("[T]he district court's decision regarding the availability of discovery is also committed to the sound discretion of the district court, and is reviewed under the abuse of discretion standard.").

Under Brady v. Maryland, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." To prove a Brady violation, Shelton must show that: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material to either guilt or punishment." Murphy, 205 F.3d at 814 n.2.

In seeking further discovery on the issue of Marissa Hierro's credibility, Shelton argued:

> [T]he credibility of Marissa Hierro is at issue. Ms. Hierro has been proven to be a liar as to Catherine Shelton's participation in the shooting death of Michael Hierro. See Motion to Expand Record and Appendix thereto (Final Judgment). It has been shown by Petitioner[] that Marissa Hierro perjured herself during trial as to her business activities in th[e] months leading up to the shooting, and . . . that the prosecution withheld such information to support Marissa Hierro's version of the "motive" for the shooting.

Shelton does not indicate what he means by Hierro's "business activities," or how Hierro's testimony regarding her "business activities" was untruthful. Shelton simply failed to provide the district court with a reason to believe that further discovery would yield evidence supporting this allegation.

Shelton also refers in passing to the final judgment of the 192nd District Court, wherein that court deemed false Hierro's allegation that Catherine Shelton was present at the scene of the shooting. Shelton appears to believe that this is evidence of actual perjury. It is not. After Catherine Shelton filed her

libel counterclaim against Hierro, Hierro abandoned the lawsuit, and Catherine Shelton took a judgment on her counterclaim. This amounted to a post-answer default on the part of Hierro. Catherine Shelton still bore the burden of proving the elements of libel at the ensuing trial, but because Hierro did not appear for the trial, only Catherine Shelton presented evidence. The civil trial court did not at any time rule that Hierro committed perjury at Shelton's criminal trial. Thus, Shelton has not shown that further discovery would uncover evidence that Marissa Hierro actually perjured herself in implicating Catherine Shelton in the shooting at the criminal trial.

Shelton was not entitled to further discovery regarding his claim that the government withheld allegedly exculpatory BFI records.[1] To satisfy Brady's materiality prong, Shelton is required to show that there "exists a 'reasonable probability' that had [the evidence in question] been disclosed the result at trial would have been different." Dickson v. Quarterman, 462 F.3d 470, 477 (5th Cir. 2006). Shelton argues that the prosecution, at the time of his trial, was in possession of BFI records illustrating that the toilet was not cleaned on December 20, 1999, and that the government offered perjured testimony, through Charles Lakes, to this effect.

Once again, Shelton fails to state a prima facie Brady claim. Even if Lakes did not clean the toilet on the morning of the murder, it does not follow that the jury would have believed Shelton's claim that he placed the mask and gloves in the toilet on the night of the 19th. Shelton admitted at trial that he was at the Hierro residence on or before the night of the shooting. He admits that the mask and gloves were his. He admits that he placed the mask and gloves in the toilet in which authorities found them. Further, Marissa Hierro testified that the shooter wore a mask similar (if not identical) to the mask Shelton admits was his. For Shelton's claim to be believed, the jury would have had to accept that the shooter coincidentally wore a similar pair of gloves and mask the very next

---

[1] As discussed, infra, the BFI route sheets are not facially exculpatory.

day. In short, given the strength of the evidence against Shelton, we cannot say that the state court's application of the Brady materiality prong was unreasonable. Thus, Shelton failed to state a prima facie Brady claim in seeking further discovery.

Shelton was not entitled to discovery regarding his Brady claim that the government wrongfully retained exculpatory phone records. Shelton avers that the prosecution, at the time of trial, was in possession of phone records which "unequivocally show that Catherine Shelton was nowhere near the Hierro residence when Michael Hierro was shot," evidence which would have shown Marissa Hierro to be dishonest at trial. Shelton provided to the district court what appear to be phone records itemizing various calls placed from Catherine Shelton's cellular phone.[2] Highlighted are entries for various calls made from Catherine's phone on the night of the murder. Shelton argued in the district court that these records show that Catherine Shelton was calling and speaking with her mother "at the precise time of the murder of Michael Hierro." Shelton argues that he could have used these records to impeach the credibility of Marissa Hierro, who placed Catherine Shelton at the scene of the shooting.

The prosecution's alleged failure to produce these records would not give rise to a Brady violation. First, the phone records do not suggest that Catherine was far from the Hierro residence on the night of the shooting, as they reflect cellular phone calls, not calls made from Catherine Shelton's residence. Catherine could have made a call on her phone shortly before pulling up to the Hierros' driveway. Second, nothing in the record indicates the "precise time" the shooting took place, a fact that severely reduces, if not forecloses, the phone

---

[2] With one exception, all of the phone records make clear that the phone to which the each record corresponds is a cellular phone. The one exception is an MCI Worldcom record, which gives no indication of the type of phone corresponding to the account. Even if we assume this record corresponds to a non-cellular phone, it does nothing to help Shelton's argument because the record neither reveals the name of the account holder nor confirms the location of the phone when certain listed calls were made.

records' exculpatory value. The shooting easily could have taken place during the time windows in which Catherine's phone was not in use.

Shelton also argues that he was entitled to discovery regarding his claim that the prosecution withheld a drawing of the perpetrator's mask allegedly produced by Marissa Hierro and provided to law enforcement shortly after the shooting. In his habeas petition, Shelton asserted that the "mask drawing contradicts the description of the mask found in the [toilet] by police, falsely indicated to be [sic] worn by the assailant" on the night of the murder. According to Shelton, the mask he wore the night before the murder had only one round hole, but Marissa Hierro testified that the assailant's mask bore two eye holes and no mouth hole.

Testimony was presented at trial to the effect that the mask found in the toilet had one large hole in the front. Nevertheless, Marissa Hierro testified at trial that the perpetrator wore a mask with two eye holes. The jury was therefore made aware of the contradiction between the mask descriptions; it nevertheless returned a verdict of guilty. As such, we cannot say that the district court erred in concluding that Shelton's allegations failed to state a prima facie claim regarding Brady's materiality prong.

Further, in his habeas brief, Shelton asserted unequivocally that the drawing depicts a mask with two holes. In his appellate brief, however, he declares "there is no telling what the drawing of the mask immediately after the shooting would reveal, but this evidence is critical to the credibility, or lack thereof, of Marissa Hierro." If Shelton does not claim certainty as to what the drawing of the mask reflects, he certainly cannot state a prima facie case that the drawing is Brady material because he cannot claim it is exculpatory. In other words, he cannot show that the drawing is "critical to" Marissa Hierro's credibility if he does not even know what the drawing reveals, or provide any basis for believing that the drawing somehow undermines Hierro's credibility.

Shelton sought discovery of evidence demonstrating that Marissa Hierro perjured herself at Shelton's trial in placing Catherine Shelton at the scene of the shooting. Shelton provides no basis on which to conclude that further discovery would yield such evidence. He points only to the aforementioned final judgment of the 192nd District Court, wherein that court found Marissa Hierro in default as to Catherine Shelton's libel claim. For reasons already stated, this document fails to give rise to a suspicion that further discovery would uncover evidence that Hierro was dishonest in implicating Catherine Shelton.

After exhaustively reviewing Shelton's district court filings and the exhibits to which Shelton points in arguing that the district court wrongfully denied him further discovery, we conclude that Shelton has either failed to provide more than bald allegations that a given avenue of discovery would yield exculpatory evidence, or has failed state a prima facie case that discovery of the respective evidence would demonstrate the unreasonableness of the state court's Brady ruling. Accordingly, the district court did not err in denying Shelton further discovery.

## 2. Motion to Expand the Record

Beyond seeking discovery of new evidence, Shelton also sought to expand the federal habeas record to include exhibits already in his possession. The State resisted, arguing that the district court should adjudicate Shelton's claims based on the evidence presented to the state court. The magistrate judge agreed and recommended that the district court deny Shelton's motion to expand the record based on case law purportedly dictating that federal habeas courts are to examine a state court's merits determinations based on the record as it stood before the state court.

Rule 7 of the Rules Governing Section 2254 Cases provides "If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." In interpreting the reach of Rule 7, the magistrate focused primarily on case law indicating that

Rule 7 does not create unlimited discretion for district courts to expand habeas records. The magistrate concluded that before a district court may exercise its discretion under Rule 7 it must first find that the petitioner has satisfied the requirements of § 2254(e). That provision, which establishes the prerequisites for an evidentiary hearing, provides:

> (e) (1) [A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> > (A) the claim relies on–
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The magistrate concluded that paragraph (e)(2)(A)(i) was inapplicable, which is correct; Shelton does not rely on a new rule of constitutional law. Thus, the magistrate evaluated Shelton's motion under (e)(2)(A)(ii), and concluded that he did not exercise due diligence in attempting to gain the allegedly exculpatory evidence he claims would, if included in the record, entitle him to relief.

Section 2254(e)(2), relating to "evidentiary hearings," also governs when a district court may consider evidence not presented to the state courts. See Bradshaw v. Richey, 546 U.S. 74, 79 (2005); Mark v. Ault, 498 F.3d 775, 788 (8th Cir. 2007). Thus, we review the district court's application of that provision.

In applying § 2254(e)(2), the initial inquiry is whether Shelton "failed to develop the factual basis of" his claims:

> The question is not whether the facts [the petitioner seeks to add to the record] could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful.

Williams v. Taylor, 529 U.S. 420, 435 (2000). The district court's conclusion that Shelton was not diligent is a finding of fact reviewed for clear error; the district court did not clearly err. After a review of the record, we find that Shelton was not diligent in developing the factual basis of his claims. Most of the evidence Shelton sought to include in the federal habeas record was brought to Shelton's attention via a letter to Shelton from Catherine Shelton's attorney, James Murphy, in which Murphy explained his belief that certain evidence that surfaced during the civil suit between Catherine Shelton and Marissa Hierro would have favored Shelton at trial. Murphy's letter is dated December 11, 2003. Shelton filed his state petition on February 4, 2004. Thus, the factual predicate Shelton now seeks to lay for his claims was available before he filed his state petition. Nevertheless, Shelton failed in his state petition to allege the existence of evidence he now invokes. Nor did Shelton, before the state court evaluated his claims, apprise that court of his need to discover additional evidence not included in the habeas record. It was not until May 24, 2004, after the state district court issued its findings of fact and conclusions of law, that Shelton asserted in state court that the deposition testimony of a BFI employee

13

supported his defense theory, and that he needed additional discovery to fully develop his case.[3]

As such, the analysis turns to whether: (1) Shelton's claims rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." § 2254(e)(2). First, Shelton not only could have, but did discover the factual predicate for his claims before the state court addressed the merits of those claims; he admits that the evidence in question came to his attention almost two months before he filed his state habeas petition. Second, for reasons explained above, none of the evidence Shelton sought to add to the federal habeas record is so favorable to Shelton's defense theory such that, had that evidence been admitted at trial, a reasonable jury would have been required to acquit. Shelton cannot satisfy § 2254(e)(2)(A)(ii), and the district court did not err in refusing to expand the habeas record.

3. Motion for an Evidentiary Hearing

Shelton argues that the district court erred in denying him an evidentiary hearing under Rule 6 of the Rules Governing Section 2254 Cases.[4] What Shelton

---

[3] In fact, in its memorandum recommending that the district court deny Shelton's petition, the magistrate judge indicated his suspicion that Shelton intentionally withheld evidence from the state court that heard Shelton's habeas claims. Although we take no position on the issue of whether Shelton intentionally withheld evidence from the state district court, it is noteworthy that Murphy, in his December 19th letter, attempted to dissuade Shelton from filing a "dry writ" in state court without taking more time to develop his case.

[4] Several days after Shelton filed his state habeas petition, the state court issued an Order Designating Issues, wherein the court appointed attorney Fred McDaniel as special master "to resolve the issues and prepare findings of fact and conclusions of law for the court." The court noted that "[t]he issues may be resolved by affidavits, depositions, interrogatories, or by hearings, as deemed necessary" by McDaniel. To help resolve Shelton's ineffective assistance claims, McDaniel next obtained an affidavit from John Young, in which Young responded to Shelton's claims that his representation of Shelton was ineffective. It appears the state court relied heavily on Young's affidavit in rejecting Shelton's ineffective assistance claims. Further, as far as we can tell, the state court did not specifically offer Shelton the opportunity to file a response to Young's affidavit.

overlooks, however, is that Rule 8, not Rule 6, governed his request for a hearing in the court below. That rule provides that "[i]f the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."

According to the Advisory Committee Note to Rule 8(a), the provision "is not intended to supersede the restrictions on evidentiary hearings contained in 28 U.S.C. § 2254(e)(2)." Thus, under the AEDPA, "requests for an evidentiary hearing are to be evaluated under the provisions of 28 U.S.C. § 2254(e)(2)." Murphy, 205 F.3d at 815. It follows that for the same reason the district court did not err in refusing to expand the record—that is, because Shelton cannot satisfy § 2254(e)(2)—the district court did not err in denying his motion for an evidentiary hearing.

## B. Ineffective Assistance of Counsel

This court also certified Shelton's appeal of the district court's rejection of his ineffective assistance of counsel claims, but only insofar as Shelton complained of his trial counsel John Young. We will not disturb a state court's adjudication of an ineffective assistance claim unless it represents an "unreasonable application of[] clearly established federal law." § 2254(d)(1). That the Sixth Amendment guarantees the effective assistance of counsel is clearly established federal law. Strickland v. Washington, 466 U.S. 668, 684-85 (1984).

---

In summarizing the procedural history of his case, Shelton complains of the process the state district court employed to adjudicate his claims. We do not deem this issue as subsumed into the greater question of whether the federal district court should have granted Shelton an evidentiary hearing. The panel that granted Shelton a COA did so only with regard to whether Shelton was entitled to a hearing under Rule 8 of the Rules Governing Section 2254 Cases; it expressly refused Shelton a COA on the issues of whether "§ 2254(d) is applicable when a full and fair hearing is not provided by the state habeas court," and whether "the state habeas court erred in considering Young's affidavit." Thus, while the state court's use of a special master in the above manner might raise questions, we do not address those questions at this time as they are not before us.

15

A party claiming ineffective assistance must show that (1) trial counsel's performance fell below an objective standard of reasonableness and (2) he suffered prejudice as a result. Id. at 687-88. To prove prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Shelton's claims of ineffective assistance before the federal habeas court can be distilled down to four based on Young's failure to: (1) "insist on obtaining" the aforementioned BFI route sheets, which allegedly show that the toilet was not cleaned on the morning of December 20, 1999; (2) "pursue formal rulings from the court on pre-trial matters, including discovery motions"; (3) argue ineffective assistance in moving for a new trial; and (4) "properly challenge and object to the [S]tates' introduction of perjury through" its witnesses.[5]

Of the four ineffective assistance arguments Shelton advances, that based on the BFI route sheets is his strongest; it is nevertheless unavailing. Shelton argued below that he suffered ineffective assistance because Young failed to request the route sheets, which allegedly contradict the testimony of Lakes that the toilet in which Shelton's mask and gloves were found was cleaned on the morning of December 20th.

Shelton has included in the record several BFI route sheets on which the toilet in question is listed for servicing. The sheets have a "run date" of December 20, 1999, the day of the shooting. Lest the court interpret the route sheets as indicating that the toilets listed therein were cleaned on the 20th, Shelton notes that the "run date" is the date the form was created, and, under BFI practice, a toilet is usually cleaned the day after the respective route sheet

---

[5] Shelton for the first time on appeal advances several additional ineffective assistance arguments. Shelton waived these arguments by not raising them below, see Little v. Liquid Air Corp., 37 F.3d 1069, 1071 n.1 (5th Cir. 1994), so we will not address them.

is printed. Shelton argues that the state wrongfully withheld these sheets at trial, and that Young failed to aggressively pursue them.

If read in the light most favorable to Shelton, the route sheets lend support to, but do not outright prove, Shelton's argument that Lakes did not clean the toilet on the morning of the 20th. That is, assuming the accuracy of Shelton's description of BFI procedure, the route sheets raise the question as to why Lakes would have been scheduled to clean the toilet on the 21st if he had cleaned it on the 20th. However, even assuming that Young acted in an objectively unreasonable manner in not more aggressively pursuing the route sheets, Shelton cannot overcome the deference we owe to the state court's conclusions under the AEDPA. Again, to prove prejudice for ineffective assistance purposes, a petitioner must demonstrate that his counsel's assistance was so deficient as to undermine confidence in the outcome of his trial. See Strickland, 466 U.S. at 694. This means that, under the AEDPA, Shelton must show that the state habeas court was unreasonable in concluding that, assuming a dereliction of duty on the part of Young, the outcome of Shelton's trial is unreliable.

First, the sheets are not facially exculpatory; they do not unequivocally show that Lakes did not clean the toilet on the 20th. At trial, Lakes testified that on the days immediately preceding Christmas, BFI employees usually rush to complete their Monday and Tuesday cleanings all on Monday. Lakes testified that although the toilet in question was scheduled to be cleaned on Tuesday the 21st, he nevertheless cleaned it on Monday the 20th because, on that day, he was already in the area, and therefore was positioned to complete his Tuesday cleanings on Monday as planned. The jury was thus provided with a basis for believing that Lakes in fact cleaned the toilet on the 20th, notwithstanding the route sheets.

Second, even assuming the BFI records lend support to Shelton's argument, and assuming that the jury concluded that the toilet was not serviced on the morning of December 20th, it does not follow that the jury would have

accepted Shelton's alibi that he placed the mask and gloves in the toilet on the night of the 19th. Shelton admitted at trial that he was at the Hierro residence on or before the night of the shooting. He admits that the mask and gloves were his. He admits that he placed the mask and gloves in the toilet in which authorities found them. In short, given the strength of the evidence against Shelton, we cannot say that the state court's application of Strickland was unreasonable.

With regard to the allegation that counsel failed to "pursue formal rulings . . . on pre-trial matters, including discovery motions," the only example Shelton provides of counsel's alleged dereliction is his failure to move for disclosure of the mask drawing offered by Hierro to authorities after the shooting. In his state court affidavit, Young did not deny that he failed to demand production of the drawing. Rather, he asserted that the apparent discrepancies between the mask depicted in the drawing and the one presented at trial were revealed to the jury through oral testimony. The state court nevertheless concluded that Shelton could not satisfy one or both prongs of Strickland. We cannot declare this conclusion unreasonable. That is, we do not find a reasonable probability that the jury would have acquitted Shelton even had it believed that Hierro told police after the shooting that the perpetrator's mask had one eye hole rather than two. Because Shelton admits that the mask found in the toilet was his, in order to make sense of any discrepancies in the mask descriptions the jury would have been required to believe Shelton's implausible story that he coincidentally was on the Hierro premises for non-criminal purposes the night before the shooting.

Nor can we conclude that the state court unreasonably applied Strickland in rejecting Shelton's ineffective claim premised on counsel's failure to "properly challenge and object to the [S]tates' introduction of perjury through" its witnesses. With regard to the testimony of Hierro and Lakes, Shelton presumably refers to Hierro's placement of Catherine Shelton at the scene of the

shooting, and Lakes' testimony regarding the BFI records and the date the toilet was cleaned. As explained above, the record provides no basis on which to conclude that either lied in testifying against Shelton, nor do we have reason to believe there exists evidence hereto undiscovered that would so demonstrate.

Shelton also alleges perjury on the part of Steven Riddle, a neighbor of the Hierros; David Nabors, a Rowlett Police lieutenant, who testified regarding the description of the mask found in the toilet; and Jimmy Patterson, a Rowlett Police detective, who testified regarding the mask drawing Marissa Hierro provided to police. Shelton alleges that Riddle lied in testifying that he recognized Shelton's voice at the scene of the shooting. He also alleges that "Patterson, Nabors and the prosecutors knew the mask found in the [toilet] was not the assailant's mask," but nevertheless lied in identifying them as the same. Shelton provides the court with no basis on which to conclude that either Riddle, Nabors or Patterson committed perjury at trial. Shelton's jury argument that the witnesses' various statements were not true, and his conclusory and unsupported allegations that those witnesses knowingly offered inaccurate testimony, is insufficient to establish perjury.

Even if the record did contain evidence demonstrating perjury, Shelton provided no basis for the state court to conclude that counsel failed to adequately subject those witnesses to meaningful cross-examination. In short, Shelton's allegations of "perjury" are conclusory and without evidentiary basis, and therefore the district court did not err in rejecting them.

Finally, the district court was correct to reject Shelton's ineffective assistance claim based on counsel's failure to assert his own alleged ineffectiveness as a basis for a new trial. Because we find no basis on which to conclude that Shelton actually suffered ineffective assistance, we see no reason to believe the trial court would have concluded that he did. As such, we cannot agree that, absent counsel's alleged error, there is a reasonable probability that the result of Shelton's trial would have been different. See United States v.

Rosalez-Orozco, 8 F.3d 198, 199 (5th Cir. 1993) ("In order to establish prejudice, Rosalez must show that [there was] a reasonable probability that had counsel moved for a judgment of acquittal, the motion would have been granted . . . ."); Burston v. Caldwell, 506 F.2d 24, 28 (5th Cir. 1975) ("The failure of petitioner's counsel to move for a directed verdict did not render [counsel's] assistance ineffective where there was possibly sufficient evidence of guilt to support a guilty verdict and no reason to believe that such a motion would be granted.").

## C. Prosecutorial Misconduct

Shelton argued before the district court that the prosecution withheld exculpatory and impeachment evidence and induced its witnesses to lie on the stand. Specifically, Shelton accuses the prosecution of wrongfully retaining the aforementioned BFI records and other "exculpatory and impeachment evidence" arising from the private suit between Hierro and Catherine Shelton. Shelton also argued below that the state used "[f]raud, lies, and deceit" to win a guilty verdict.

To prevail on a Brady claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Notably, Brady's materiality prong is identical to Strickland's prejudice prong. Compare Strickland, 466 U.S. at 687-88, 694 ("A party claiming ineffective assistance must show that . . . he suffered prejudice . . . . To prove prejudice, a petitioner must demonstrate . . . that, but for counsel's unprofessional errors, the result of the proceeding would have been different."), with Dickson, 462 F.3d at 477 ("[For Brady purposes,] [m]ateriality is shown if there exists a reasonable probability that had [the evidence in question ]been disclosed the result at trial would have been different. (citation and internal quotation marks omitted)). Thus, per our Strickland conclusion above, Shelton

did not show below that his inability to access the BFI records undermines confidence in the outcome of his trial. It follows that the state court's Brady ruling with regard to the BFI records was not unreasonable in light of clearly established federal law. See Dickson, 462 F.3d at 477 ("Under [the] AEDPA, we do not decide de novo whether a state prisoner has sufficiently proven a Brady violation. Rather, we decide whether the state court's Brady determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law."). With regard to Shelton's other claims of prosecutorial misconduct, the record is simply devoid of evidence to support them.

## III. CONCLUSION

We have carefully examined the record and find that Shelton simply cannot overcome the deference we owe under the AEDPA to the state court's adjudication of his claims. The judgment of the district court is AFFIRMED.